# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

KRISTA L. FARMER                                                         PLAINTIFF

V.                         NO. 4:17CV00749 BSM/PSH

SOCIAL SECURITY ADMINISTRATION                             DEFENDANT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to Chief United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## I. Introduction:

Plaintiff, Krista L. Farmer, applied for disability benefits on July 28, 2011, alleging a disability onset date of October 1, 2007. (Tr. at 14). The application was denied initially and upon reconsideration. *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Ms. Farmer's claim. (Tr. at 27). The Appeals Council denied her request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Ms. Farmer has requested judicial review.

For the reasons stated below, the Court should affirm the decision of the Commissioner.

## II. The Commissioner's Decision:

The ALJ found that Ms. Farmer had not engaged in substantial gainful activity since the application date of July 28, 2011. (Tr. at 16). At Step Two of the sequential five-step analysis, the

ALJ found that Ms. Farmer had the following severe impairments: degenerative disc disease, osteoarthritis, obesity, sleep apnea, anxiety, and an affective disorder. *Id*.

The ALJ found that Ms. Farmer's impairments did not meet or equal a listed impairment. (Tr. at 17). Before proceeding to Step Four, the ALJ determined that Ms. Farmer had the residual functional capacity ("RFC") to perform work at the sedentary level, with some limitations. She could only occasionally stoop and could never crouch, crawl, or kneel. (Tr. at 20). She could perform work where the interpersonal contact is incidental to the work performed, where incidental is defined as requiring a limited degree of interaction such as meeting and greeting the public, answering simple questions, accepting payment, and making change. *Id*. The complexity of tasks must be learned by demonstration or repetition within 30 days, with few variables and little judgment, and the supervision required is simple, direct, and concrete. *Id*.

The ALJ next found that Ms. Farmer was unable to perform any past relevant work. (Tr. at 25). The ALJ relied on the testimony of a Vocational Expert ("VE") to find that, considering Ms. Farmer's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform, such as document preparer and lampshade assembler. (Tr. at 26). Therefore, the ALJ found that Ms. Farmer was not disabled. *Id*.

III. **Discussion**:

A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion,

2

"substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing.

B. Ms. Farmer's Arguments on Appeal

Ms. Farmer contends that substantial evidence does not support the ALJ's decision to deny benefits. She argues that the mental and physical RFC did not incorporate all of Ms. Farmer's limitations, that the ALJ failed to conduct a function-by-function RFC analysis, and that the ALJ failed to meet his burden at Step Five. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

Ms. Farmer complained of back pain, fibromyalgia, and anxiety, combined with some other conditions, which the ALJ did not find to be severe. An MRI of the lumbar and thoracic spine in March 2011 was normal, and a cervical MRI showed minimal degenerative changes. (Tr. at 337). Normal examination findings are not indicative of disabling pain. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001). A back MRI in December 2011 showed minimal disc disease with some facet

3

disease, but no significant neurological sequela. (Tr. at 495). Objective tests showing mild to moderate conditions do not support a finding of disability. *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004). An office note from January 2012 showed a "perfect [back] MRI" with no sign of nerve root impingement. (Tr. at 458). At that time, strength was normal in the upper and lower extremities and Ms. Farmer had negative straight-leg raise. *Id*. In March 2012, Ms. Farmer had good range of motion in her neck, with some tenderness in the cervical spine. Sensation and strength were normal, but there was a positive straight-leg raise. (Tr. at 395). In 2011, 2012, and 2014, Ms. Farmer said that back pain was relieved by rest and narcotic medications. (Tr. at 551, 569, 575). Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

Throughout the relevant time-period, Ms. Farmer complained of joint pain and was diagnosed with fibromyalgia. However, she was urged to exercise and attend physical therapy. (Tr. at 338, 412). And lack of physical activity was observed as an aggravating factor. (Tr. at 586). A physician's recommendation to exercise suggests that a claimant has an increased functional capacity. *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009). Moreover, nerve conduction studies were normal, and neurological office testing was routinely normal. (Tr. at 330, 356, 379, 424, 570).

Ms. Farmer presented with anxiety on several occasions, but mental status exams were normal in March 2011, May 2011, June 2011, December 2012, February 2013, and September 2014. (Tr. at 424, 554, 561-564, 594-601). She did not require hospitalization for psychiatric issues and she became very angry when her doctor recommended a psychiatric consultation. (Tr. at 459). Refusal to follow a prescribed course of treatment undercuts a claimant's allegations of disability.

4

*Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997). Moreover, Ms. Farmer said that she did not have significant problems with memory or concentration, and could get along with others. (Tr. at 43-45). She was able to do activities of daily living like dusting, doing laundry, washing, caring for pets, going to church, and doing water aerobics. (Tr. at 38-40, 48-54). Such daily activities undermine her claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995); *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

Ms. Farmer argues that the mental and physical RFC exceeded her abilities. A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). The psychiatric state-agency consultant found non-severe mental impairments, which was a reasonable conclusion given the lack of treatment or severe symptoms. (Tr. at 97-98). However, the ALJ credited some of Ms. Farmer's complaints and assigned mental limitations in the RFC. He noted Ms. Farmer's negative reaction to stress and fatigue associated with sleep apnea. With lack of psychiatric treatment and relatively normal mental status exams throughout, the record does not suggest more cognitive workplace restrictions than those that were assigned by the ALJ.

The two state-agency consultants reviewing physical impairments found evidence supporting a sedentary RFC. (Tr. at 100, 119). Again, the ALJ added postural limitations to the RFC based on Ms. Farmer's subjective complaints, even though the objective findings did not

reveal debilitating conditions. The Court observes that the ALJ went further than the state-agency consultants as far as RFC is concerned, which undercuts Ms. Farmer's argument that the RFC was not supported by the evidence.

Ms. Farmer argues that the ALJ failed to conduct a function-by-function analysis when determining the RFC. However, the record was replete with assessments of Ms. Farmer's functional abilities. The state-agency consultants did function-by-function analysis, and the ALJ relied on their opinions. Ms. Farmer herself testified to how long she could walk and what she could lift and carry. (Tr. at 39). When asked by her attorney about standing, stooping, and bending, she indicated limitations. (Tr. at 46). Indeed, a claimant's testimony is part of what the ALJ shall consider in assigning functional limitations in the RFC. *Masterson*, 363 F.3d at 738 (the ALJ must determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and a claimant's own descriptions of her limitations). There is no reason to believe that the ALJ failed to consider Ms. Farmer's testimony when assigning functional limitations. The ALJ could and did properly find as he did regarding the RFC. Finally, while the burden to establish an RFC is on the claimant, Ms. Farmer did not present evidence from a treating physician about function-by-function restrictions. *Id*. Since she did not provide evidence to contradict the state-agency doctors, the ALJ was right to rely on those opinions. *See Musial v. Astrue*, 347 Fed. Appx. 260, 262, 2009 U.S. App. LEXIS 21975 (8th Cir. Oct. 6, 2009)(ALJ properly relied upon state-agency doctor's opinion when claimant did not offer contrasting medical opinion). The ALJ conducted a proper RFC analysis.

Finally, Ms. Farmer asserts that the ALJ did not fulfill his burden at Step Five because the jobs identified by the VE required higher reasoning levels than the RFC provided. The ALJ limited

6

Ms. Farmer to simple jobs with few variables and little judgment. (Tr. at 20). Ms. Farmer points to the level three reasoning label for the document preparer job as beyond the limitation to simple work. See *Dictionary of Occupational Titles* ("DOT") #249.587-018. Indeed, level three reasoning encompasses jobs involving several concrete variables, which may be incompatible with simple work. DOT, App'x. C: "Components of the Definition Trailer." However, the job of lampshade assembler requires level two reasoning, which comprises work involving only a few concrete variables, which is entirely compatible with the RFC in this case. *Id*., DOT #739.684-094. And the RFC in this case provided for SVP 2 work.[1] An SVP of 2 is commensurate with unskilled work, such as the work described in the RFC. *See* Social Security Ruling 00-4p (Dec. 4, 2000). The lampshade assembler job is work at the SVP 2 level.

Moreover, the Eighth Circuit has repeatedly recognized that DOT definitions are "simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range." *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010). Not all of the jobs in every category have requirements identical to or as rigorous as those listed in the DOT. See *Wheeler v. Apfel*, 224 F.3d 891, 897 (8th Cir. 2000). Even if we ruled out the document preparer job as incompatible with the RFC, there were 60,000 lampshade assembler jobs still available in the national economy. (Tr. at 26). The Eighth Circuit has held that "as few as 10,000 national jobs [is] a sufficient number to constitute significant national work." *Johnson v. Chater*, 108 F.3d 178,

---

[1] The SVP (specific vocational profile) level listed for each occupation in the DOT connotes the time needed to learn the techniques, acquire the information, and develop the facility needed for average work performance. At SVP level one, an occupation requires only a short demonstration, while level two covers occupations that require more than a short demonstration but not more than one month of vocational preparation. *Hulsey v. Astrue*, 622 F.3d 917, 923 (8th Cir. 2010); DOT, App'x. C, at 1009 (4th ed. 1991).

180 (8th Cir. 1997). The ALJ properly relied upon VE testimony consistent with the DOT to fulfill his Step Five burden.

VI. **Conclusion**:

There is substantial evidence to support the Commissioner's decision that Ms. Farmer was not disabled. The ALJ made a proper RFC determination and he fulfilled his burden at Step Five. The decision, therefore, should be affirmed. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 8th day of August, 2018.

_____
UNITED STATES MAGISTRATE JUDGE